UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-2707(DSD/SRN)

Lennie Rydell Senter,

       Plaintiff,

v.                                                          **ORDER**

Mark Ross, individually and
in his Official Capacity as
a St. Paul Police Officer,
Ian Kough, individually and
in his Official Capacity as
a St. Paul Police Officer,
Michael Conroy, individually and
in his Official Capacity as
a St. Paul Police Officer,
Daniel Moriarty, individually and
in his Official Capacity as
a St. Paul Police Officer, and
City of St. Paul,

       Defendants.

      Lennie Rydell Senter, 1706 Winndown Trail S.E., Smyrna, GA 3087, *pro se.*

      Cheri M. Sisk, Assistant St. Paul City Attorney, James F. Jerskey, Assistant St. Paul City Attorney, 15 West Kellogg Boulevard, 750 City Hall and Courthouse, St. Paul, MN 55102, counsel for defendants.

      This matter is before the court upon defendants' motion to dismiss and, alternatively, for summary judgement.[1]  Based upon a

---

[1] Also before the court is plaintiff's pro se motion for "jury trial prosecution," which the court construes as an opposition to defendants' motion for summary judgment. Following the July 2, 2007, hearing, plaintiff also mailed a packet of documents and photographs to the court without explanation or a
                                                          (continued...)

review of the file, record and proceedings herein, and for the reasons stated, the court conditionally denies defendants' motion to dismiss and grants defendants' motion for summary judgment in part.

**BACKGROUND**

Pro se plaintiff Lennie Senter filed this civil rights action pursuant to 42 U.S.C. § 1983[2] claiming that defendants Saint Paul Police Officers Mark Ross, Ian Kough and Michael Conroy; Saint Paul Sergeant Daniel Moriarty; and the City of Saint Paul violated his Fourth Amendment rights. Specifically, Senter alleges that on June 12, 2004, Officer Ross stopped, searched and arrested him without a lawful reason or probable cause. Senter further alleges that after he initially resisted being handcuffed, Officers Ross, Kough and Conroy responded with unreasonable and excessive force. In addition, Senter claims that Sergeant Moriarty maliciously prosecuted him for assault on a peace officer and that the City of

---

[1](...continued)
supporting affidavit. Plaintiff did not electronically file the documents and there is no evidence that Senter served the documents on defendants. Therefore, the court has not taken the untimely, ex parte documents into consideration.

[2] The statute provides that "every person who, under color of [law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...." 42 U.S.C. § 1983.

2

Saint Paul is vicariously liable for the conduct of Officers Ross, Kough, Conroy and Moriarty.  Finally, Senter asserts state law claims of assault, battery, illegal search, false arrest, malicious prosecution and intentional infliction of emotional distress against all the officers.

I.  **Factual Background**

Senter was at a local bar in St. Paul, Minnesota, the evening of June 11, 2004. At approximately 1:00 am on June 12, Senter left the bar and drove his vehicle out of the bar's parking lot.  Senter noticed a squad car driven by Officer Ross behind him.  (Senter Dep. at 44-45.)   Officer Ross drove behind Senter's vehicle approximately four to five blocks as Senter made several turns. (Id. at 49-50.)  According to Officer Ross, he observed Senter fail to signal three times.  (Ross Aff. ¶ 2.)  Officer Ross activated his squad car's flashing lights as he followed Senter west through the intersection of Lexington Parkway and St. Anthony Avenue in St. Paul.  (Id. at 48.)   Senter saw the lights but did not immediately pull over.  Rather, he drove approximately four blocks, turned north onto Hamline Avenue and then finally stopped.[3]  (Id. at 48.)

---

[3] Although the parties dispute whether Senter continued to drive westbound on St. Anthony Avenue or whether he briefly entered and exited westbound Interstate 94, the parties agree that Officer Ross activated his lights at the intersection of Lexington Parkway and St. Anthony Avenue, that Senter drove a distance of approximately four blocks and that Senter did not pull over until he was driving north on Hamline Avenue.

Once Senter stopped his vehicle, Officer Ross approached but could not see inside because the vehicle had tinted windows. Using a flashlight, Officer Ross determined that Senter was alone in the vehicle and saw Senter reach for something to the right of the driver's seat. (Ross Aff. ¶¶ 3-5.) At that point, Officer Ross pulled open the driver-side door and ordered Senter to keep his hands visible. (Id. ¶ 6.) Officer Ross smelled alcohol on Senter's breath. (Id.) Officer Ross immediately told Senter that Senter should have stopped his vehicle when he first saw the police car's flashing lights. (Senter Dep. at 55.) He then pulled Senter out of the car and forcibly led him to the back of Senter's vehicle. (Id.) Officer Ross told Senter to place his hands above his head, and Senter complied. (Id. at 58-59.) Officer Ross then conducted a pat search of Senter's person to check for weapons and drugs while Senter's hands remained over his head. Although Officer Ross did not find weapons or drugs, he nevertheless attempted to handcuff Senter. (Id. at 62-64.)

There are fact issues in the record as to how the subsequent altercation between Senter and Officer Ross began and the ensuing arrest of Senter. The court sets forth the facts according to Senter. Senter allowed Officer Ross to pull one of his arms down from his head to be handcuffed. At that point, however, Senter began to resist. (Id. at 64.) While trying to pull Senter's second arm down, Officer Ross's forearm hit Senter's nose and lip.

(Id.)  Senter then swung around and "bear hugged" Officer Ross, the two men fell to the ground and Senter positioned himself on top of Officer Ross.  (Id. at 65-66.)  According to Senter, he permitted Officer Ross to call for assistance but Officer Ross remained pinned with his face to the ground while Senter remained "in total control."  (Id. at 66, 68-69.)

Carl Reeck, a citizen driving by at the time, witnessed the encounter and got out of his car to assist Officer Ross.  Reeck approached the two men who were in a stalemate position on the ground.  Reeck straddled Senter, placed him in a chokehold and pulled Senter off of Officer Ross.  (Senter Dep. at 67.)  Officer Ross then immediately sprayed Senter in the face with aerosol subject restraint ("ASR").  (Id. at 70.)

After being sprayed with ASR by Officer Ross, Senter could not see.  Senter was on his stomach on the street requesting to be handcuffed and saying that he would stop resisting.  (Id. at 69-70.)  Senter heard cars approach and an officer say that he was going to deploy his taser.  An officer then deployed his taser twice into Senter's back — in his upper shoulder blade and buttocks.  Officers then steadily hit Senter in the back of his legs with ASP batons and a few times on his lower back.  Throughout this time Senter was on the ground with his hands behind his back asking the officers to stop and telling them he was no longer resisting.  (Id. at 71.)  Senter rolled over onto his back because

5

he was in pain and was an officer deployed his taser into Senter's stomach. (Id. at 75-76.) Senter remained on the street throughout the entire time, and it would have been physically impossible for him to attempt to run away after having been sprayed with ASR, tased and hit with the ASP batons. Senter claims that officers deployed their tasers five to six times, struck him with ASP batons approximately seventy times and an officer placed his foot on Senter's neck. (Id. at 72.) Senter ultimately passed out, and the officers sat him up next to a squad car.[4] (Id. at 76-77.) The officers then drove Senter to the Ramsey County Law Enforcement Center ("RCLEC").

At the RCLEC, Officers Conroy and Kough removed Senter from the squad car and physically assisted him into the building. The parties' accounts again vary but it is undisputed that Senter's

---

[4] According to the officers, Officer Kough was the first officer to arrive on the scene and Officer Conroy arrived shortly thereafter. Officer Kough deployed his taser three times to three different locations in Senter's back for intervals of six seconds, eight seconds and eight seconds respectively. (See Kough Aff. ¶¶ 6-8.) Officer Conroy deployed his taser at least once to Senter's abdomen for eight seconds, and the record is unclear whether Officer Conroy deployed his taser a second time. (Conroy Aff. ¶ 6.) According to the officers, Senter did not cease resisting, and after Senter was sprayed with ASR, tased and initially struck by ASP batons, Senter got on his feet and ran away. At that point, the officers ran after Senter, tackled him and delivered additional strikes with their ASP batons. Throughout the course of the arrest, Officer Kough used his ASP baton several times on Senter's left leg, Officer Conroy delivered approximately 20 ASP baton strikes to Senter's left thigh and Officer Ross delivered approximately 30 ASP baton strikes to Senter's right knee area and the back of his right leg. (Ross Aff. ¶ 22; Kough Aff. ¶ 14; Conroy Aff. ¶ 10.)

head hit a wall at least two times. According to Senter, he was disoriented, could barely walk and did not resist entering the RCLEC; and the officers slammed his head into the wall. (Senter Dep. at 82.) According to defendants, Senter continued to physically resist their efforts to escort him, and Senter's head hit the wall inadvertently as a result of his resistance. (Conroy Aff. ¶¶ 14-16; Kough Aff. ¶¶ 17-19.)

The officers handed Senter over to Ramsey County deputies. Before Senter was formally booked, he remained handcuffed in a holding room for approximately five to eight hours. (Senter Dep. at 83-84.) Eventually, Senter proceeded through the booking process, was questioned by Sergeant Moriarty and was charged with assaulting Officer Ross. (Id. at 88.) Following trial in Ramsey County District Court, a jury convicted Senter of gross misdemeanor fourth degree assault on a police officer in violation of Minnesota Statutes section 609.2231, subdivision 1.

## II. Procedural History

Senter filed this lawsuit on June 12, 2006. On July 6, 2006, Magistrate Judge Susan Richard Nelson issued a notice of pretrial conference instructing the parties to discuss settlement and prepare a Rule 26(f) report by July 18, 2006. Defendants attempted to contact Senter by telephone and U.S. Mail to schedule the conference. However, Senter was unreachable because he had moved. (Sisk Aff. ¶ 5.) Senter did not comply with the instructions set

forth in the pretrial conference notice or file a Rule 26(f) report, but he did appear at the pretrial conference on August 8, 2006. (Id.)

Under the terms of the pretrial scheduling order, initial disclosures were due October 1, 2006, and the parties were to complete discovery by May 1, 2007. On October 11, 2006, defendants served Senter with discovery requests. (Id. ¶ 6, Ex. A.) On November 17, 2006, Senter appeared for his deposition and brought with him documents in response to defendants' discovery requests. On November 21, 2006, defendants mailed Senter a letter reminding him to provide all remaining discovery responses. Receiving no reply, defendants mailed additional reminder letters on December 8, 2006, January 16, 2007, and February 7, 2007. (Id. ¶ 9, Exs. C-E.) On February 9, 2007, defendants' counsel saw Senter in the Ramsey County courthouse, reminded him of his discovery obligations and personally provided him copies of the four letters that defendants had mailed to him. (Id. ¶ 10.) On February 9, defendants wrote Senter to inform him that an independent medical exam ("IME") was needed and that defendants would schedule an exam for Senter if defendants did not hear back from Senter by February 23, 2007, regarding when he would be available. (Id. Ex. F.)

In a letter dated February 27, 2007, defendants informed Senter that his IME was scheduled for March 23, 2007, and that defendants had scheduled a hearing on their motion to compel

8

discovery for April 9, 2007.  (Id. Ex. H.)  On March 21, 2007, defendants formally moved the court to compel Senter to comply with his discovery obligations and unsuccessfully attempted to personally serve Senter at his last known residence or place of employment.  (Id. Exs. I-J.)  Senter did not appear for his IME on March 23, 2007, and did not contact defendants to reschedule.  (Id. ¶ 20.)  Defendants incurred a cost of $591 for the IME.  (Id. Ex. N.)  Senter did not appear at the hearing on defendants' motion to compel.  On April 9, Senter filed a notice of change of address informing the court that he had moved to Georgia.

On April 12, 2007, Magistrate Judge Nelson granted defendants' motion to compel discovery and ordered Senter to respond to defendants' remaining discovery requests by April 25, 2007. Magistrate Judge Nelson warned that failure to comply with the court's order may lead to the imposition of sanctions including dismissal.  Senter electronically filed answers to defendants' interrogatories on April 25 but he did not provide a full response to defendants' discovery requests nor did he serve defendants with his answers to the interrogatories until April 26, 2007.  (Id. ¶ 24.)  On April 25, 2007, defendants personally served Senter with notice of defendants' motion to dismiss for failure to prosecute when defendants' counsel encountered Senter in the Ramsey County Courthouse law library.  (Id. ¶ 23.)

9

On May 16, 2007, defendants moved to dismiss this action for lack of prosecution and, alternatively, for summary judgment on all claims.  Specifically, defendants argue that dismissal of this action is warranted under Federal Rule of Civil Procedure 41(b) based on Senter's failure to prosecute his claims.  Alternatively, defendants argue that Senter's false arrest and unlawful search claims should be dismissed under the "favorable termination rule" established in Heck v. Humphrey, 512 U.S. 477 (1994).  Lastly, defendants argue that summary judgment is warranted on all claims because the officers are entitled to protection under the doctrines of qualified and absolute immunity.

For the reasons that follow, the court conditionally denies defendants' motion to dismiss for failure to prosecute, grants defendants' motion to dismiss plaintiff's false arrest claims, grants defendants' motion for summary judgment on plaintiff's malicious prosecution claims and reserves ruling on defendants' motion for summary judgment on the remainder of plaintiff's claims pending the parties' compliance with this order.

## DISCUSSION

### I. Failure to Prosecute

Defendants argue that Senter's failure to comply with court orders and the Federal Rules of Civil Procedure justify dismissal of his case for failure to prosecute.  Rule 41(b) provides that a

defendant may move for dismissal "for failure of the plaintiff to prosecute or to comply with [the] rules [of civil procedure] or any order of the court."  Fed. R. Civ. P. 41(b).

The court evaluates the facts and circumstances of each case to determine if dismissal for failure to prosecute is warranted. Navarro v. Chief of Police, Des Moines, Iowa, 523 F.2d 214, 217 (8th Cir. 1975).  Although the court has discretion to take the totality of the circumstances into account, pro se litigants are "not excused from complying with substantive and procedural law." Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986).  The court will impose a sanction for failure to comply with court orders that is "proportionate to the litigant's transgression."  Doe v. Cassel, 403 F.3d 986, 990 (8th Cir. 2005).  Dismissal of an action with prejudice for failure to prosecute is "a drastic sanction which should be sparingly exercised."  Navarro, 523 F.2d at 217 (citing Welsh v. Automatic Poultry Feeder Co., 439 F.2d 95, 97 (8th Cir. 1971)).  However, the court will bypass lesser sanctions "in the face of a clear record of delay or contumacious conduct by the plaintiff."  Id.  To warrant dismissal with prejudice, there must exist a serious showing of willful "disobedience or intentional delay."  Hunt v. City of Minneapolis, 203 F.3d 524, 527 (8th Cir. 2000).  "Intentional" does not need to incorporate bad faith but

only that the plaintiff's actions were not "accidental or involuntary."  <u>Rodgers v. Univ. of Missouri</u>, 13 F.3d 1216, 1219 (8th Cir. 1998).

The court finds that at this stage in the proceedings Senter has not willfully or contumaciously disobeyed court orders or procedures.  However, plaintiff did not participate in preparing a Rule 26(f) report, failed to timely update his contact information on two occasions, intentionally ignored discovery requests absent a court order and provided no justification for not appearing for his IME other than that the court had not ordered him to appear.  Although Senter gave defendants certain documents at his deposition, based on the record it appears that despite the court having now ordered full compliance with all of defendants' discovery requests, Senter has yet to do so.  (Sisk Aff. ¶ 24.)

Upon a consideration of the totality of circumstances involved in the procedural history of this case, the court conditionally denies defendants' motion to dismiss for failure to prosecute without prejudice.  The court's denial of the motion to dismiss is contingent upon Senter fully complying with his discovery obligations, providing defendants all outstanding requested documents, and scheduling and appearing for an IME by September 28, 2007.  Senter shall contact defendants' counsel to arrange for the scheduling of the IME by August 31, 2007.  In addition, Senter shall reimburse defendants for the $591 cost of the IME that he did

not attend by September 28, 2007. The court will not grant an extension of time to comply with this order absent good cause shown. Further, in the event Senter moves or changes his mailing address, he shall notify defendants' counsel and the clerk's office of the change in address within two days of any such change and provide a new address where he can be served all documents related to this litigation.

If plaintiff fails to comply with the time schedule set forth in this order, defendants shall inform the court with a supporting affidavit, and the court will dismiss this action with prejudice for failure to prosecute. If plaintiff complies with the time schedule established herein, the parties shall inform the court by October 5, 2007, whether supplemental briefing of the pending summary judgment motion is necessary. If supplemental briefing is not necessary, the court will thereafter issue an order on defendants' motion for summary judgment on the remainder of plaintiff's claims. If supplemental briefing is necessary, the court will establish a deadline for the supplemental briefs and will then take the remaining issues under advisement on the briefs without an additional hearing.

**II. Favorable Termination Rule**

Defendants next argue that Senter's unlawful search and seizure and false arrest claims should be dismissed pursuant to the "favorable termination rule" established in Heck v. Humphrey, 512

U.S. 477 (1994). In Heck, the Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must first prove that the underlying conviction or sentence has been invalidated or reversed. See 512 U.S. at 486-87. Absent such a showing, the court must determine whether a favorable judgment on a plaintiff's § 1983 claim "would necessarily imply the invalidity of his conviction or sentence." Id. at 487. To do so, the court looks "'to the essence of the plaintiff's claims.'" Portley-El v. Brill, 288 F.3d 1063, 1067 (8th Cir. 2002) (quoting Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996)).

In the context of searches and seizures, successful legal challenges under the Fourth Amendment do not necessarily invalidate a state court conviction because of doctrines such as independent source, inevitable discovery and harmless error. Moore v. Sims, 200 F.3d 1170, 1172 (8th Cir. 2000) (per curiam). As to Senter's claim that Officer Ross lacked probable cause to stop Senter, the traffic stop is factually and legally distinct from the subsequent assault of Officer Ross for which Senter was arrested and convicted. Successfully challenging the legality of the stop would not necessarily imply the invalidity of Senter's state court assault conviction. Therefore, Senter's claim that Officer Ross lacked probable cause to stop him is not Heck-barred.

However, success on Senter's claim that Officer Ross lacked probable cause to arrest him for assault would necessarily imply the invalidity of his conviction for assault. See Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131 (8th Cir. 1999) (§ 1983 false arrest claim Heck-barred if underlying conviction has not been invalidated); Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam) (allegation that officer lacked probable cause to arrest directly challenges validity of conviction). Therefore, the court dismisses Senter's § 1983 false arrest claim. For these same reasons, the court dismisses Senter's state law false arrest claim. See Anderson, 192 F.3d at 1131 (dismissal of pendent state law false arrest claim under Heck is appropriate).

### III. Malicious Prosecution Claims

Lastly, Senter alleges that Moriarty maliciously prosecuted him for assaulting Officer Ross. Because the Constitution does not mention malicious prosecution and there is no federal cause of action for such a claim, a claim of malicious prosecution is not cognizable under § 1983 unless the defendants' alleged conduct also deprived a plaintiff of his rights under the Constitution or other federal law. See Gunderson v. Schlueter, 904 F.2d 407, 409 (8th Cir. 1990); Cameo Convalescent Ctr., Inc. v. Senn, 738 F.2d 836, 845 (7th Cir. 1984); Alvarez Castro v. Negron, 475 F.Supp.2d 147, 151-52 (D.P.R. 2007). In this case, however, regardless of whether

Senter's malicious prosecution claim can be pursued under § 1983 or solely as a state law claim, any such claim fails.

Sergeant Moriarty is not a prosecutor and did not participate in the prosecutorial decision to bring charges against Senter, a decision that is absolutely immune from civil liability under Minnesota law. Brown v. Dayton Hudson Corp., 314 N.W.2d 210, 214 (Minn. 1981). Furthermore, a necessary element of a malicious prosecution claim is that the proceedings terminated in favor of the accused, an element Senter cannot establish because a jury convicted him of assaulting Officer Ross. See Henry v. City of Minneapolis, 512 F.Supp. 293, 295 (D. Minn. 1981). For all these reasons, summary judgement in favor of Sergeant Moriarty and the City of St. Paul on plaintiff's malicious prosecution claims is warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss for failure to prosecute [Doc. No. 30] is conditionally denied.

2. Defendants' motion for summary judgment [Doc. No. 30] is granted as to plaintiff's false arrest and malicious prosecution claims.

3. Plaintiff's false arrest and malicious prosecution claims are dismissed.

4.   Plaintiff shall contact defendants' counsel no later than August 31, 2007, to schedule an IME and shall appear for such IME no later than September 28, 2007.

6.   Plaintiff shall comply with all outstanding discovery obligations and produce all requested documents by September 28, 2007.

7.   Plaintiff shall reimburse defendants $591 by September 28, 2007, for the cancelled IME that he did not attend.

8.   No extensions of time will be granted for plaintiff to comply with this order absent good cause shown.

9.   Plaintiff shall notify defendants' counsel and the clerk of district court within two days of any change in plaintiff's mailing address or contact information.

10.   Defendants shall inform the court if plaintiff fails to comply with any provision of this order.

11.   Failure to comply with this order will result in dismissal of this action with prejudice.

12.   Upon plaintiff's compliance with the terms of this order, the parties shall advise the court by October 5, 2007, whether supplemental briefing on defendants' motion for summary judgment is

necessary and the court will take the pending summary judgment motion under advisement without a further hearing.

Dated:  August 15, 2007

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court