UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-2707(DSD/SRN)


Lennie Rydell Senter,

       Plaintiff,

v.                                                    **ORDER**

Mark Ross, individually and
in his Official Capacity as
a St. Paul Police Officer,
Ian Kough, individually and
in his Official Capacity as
a St. Paul Police Officer,
Michael Conroy, individually and
in his Official Capacity as
a St. Paul Police Officer,
Daniel Moriarty, individually and
in his Official Capacity as
a St. Paul Police Officer, and
City of St. Paul,

       Defendants.


    Lennie Rydell Senter, 3637 Bellaire Avenue, #106, White
    Bear Lake, MN 55110, *pro se*.

    Cheri M. Sisk, Assistant St. Paul City Attorney, James F.
    X. Jerskey, Assistant St. Paul City Attorney, 15 West
    Kellogg Boulevard, 750 City Hall and Courthouse, St.
    Paul, MN 55102, counsel for defendants.



    This matter is before the court upon defendants' motion to

dismiss and, alternatively, for summary judgment.[1]  Based upon a

review of the file, record and proceedings herein, and for the

---

    [1]  Also before the court is plaintiff's pro se motion for
"jury trial prosecution," which the court construes as an
opposition to defendants' motion for summary judgment.

reasons stated, the court grants in part and denies in part defendants' motion.

## BACKGROUND

The facts giving rise to this order are fully set forth in the court's August 15, 2007, order. In that order, the court dismissed plaintiff Lennie Rydell Senter's ("Senter") false arrest and malicious prosecution claims and deferred judgment on the remaining claims.[2] Because Senter complied with the court's August 15 order, the court now addresses his remaining claims asserting constitutional violations, assault, battery and intentional infliction of emotional distress.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[2] The defendants are Saint Paul police officers Mark Ross ("Ross"), Ian Kough ("Kough") and Michael Conroy ("Conroy"); Saint Paul Sergeant Daniel Moriarty ("Moriarty"); and the City of Saint Paul. The court dismissed the only claim against Moriarty - malicious prosecution - in its August 15 order.

to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S.  242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

## II.  § 1983 Claims

United States Code Title 42, section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, the first task in considering a § 1983 claim is "to identify the specific constitutional right allegedly infringed."  Id. at 271 (citing

3

Graham v. Connor, 490 U.S. 386, 394 (1989)).   In this case, Senter alleges that defendants — both individually and in their official capacity as Saint Paul police officers — and the City of St. Paul violated his Fourth Amendment rights.[3]   Specifically, Senter alleges that Officer Ross stopped him without probable cause and that Officers Ross, Kough and Conroy used excessive force during his arrest and transfer to the Ramsey County Law Enforcement Center ("RCLEC").

### A.   Qualified Immunity of Individual Officers

The individual defendants move for summary judgment on grounds of qualified immunity.  Qualified immunity provides protection from civil liability to government agents who perform discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).   Qualified immunity is a question of law for the court that should be decided early so as to shield appropriate officials from suit.  Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992).  The court applies the doctrine of qualified immunity in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly

---

[3]   Although Senter asserts each claim against the individual defendants in their official capacity, a claim against a public employee in his or her official capacity is merely a claim against the public employer.   See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535-36 (8th Cir. 1999).

incompetent or those who knowingly violate the law.'"   <u>Walker v. City of Pine Bluff</u>, 414 F.3d 989, 992 (8th Cir. 2005) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)).

In evaluating a claim of qualified immunity, the initial inquiry is whether the facts show a violation of a constitutional right.   <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001); <u>Craighead v. Lee</u>, 399 F.3d 954, 961 (8th Cir. 2005).   If the court determines that the facts, construed in the light most favorable to the nonmoving party, do not establish a violation of a constitutional right, no further inquiry is necessary.   <u>Saucier</u>, 533 U.S. at 201. If the facts establish a constitutional violation, the court must then determine whether the right was "clearly established" at the time of the violation.   <u>Id.</u>   A right is "clearly established" if the contours of that right are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"   <u>Wilson v. Layne</u>, 526 U.S. 603, 614-15 (1999) (quoting <u>Anderson</u>, 483 U.S. at 640).   In other words, in light of pre-existing law, "the unlawfulness must be apparent."   <u>Anderson</u>, 483 U.S. at 640.   The dispositive inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."   <u>Saucier</u>, 533 U.S. at 201.

### 1.   Probable Cause to Stop

To stop an automobile, which constitutes a seizure within the meaning of the Fourth Amendment, law enforcement must have "probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996).  The subjective intentions of the officer making the stop "play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813; see also United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1990) (traffic stop valid even if officer would have ignored violation but for other suspicions).  Probable cause for a traffic stop can be based on any traffic violation. United States v. Walker, 494 F.3d 688, 692 (8th Cir. 2007); United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007).  Failure to properly signal a turn or a lane change in violation of state law is probable cause to stop a driver. See United States v. Rodriquez-Lopez, 444 F.3d 1020, 1023 (8th Cir. 2006); see also Minn. Stat. § 169.19, subdiv. 5 (requires signal to turn).

In this case, Officer Ross pulled over Senter because Senter failed to properly use his turn signal three times.  Senter has failed to present any evidence to the court to contradict Officer Ross's observation or to substantiate Senter's allegation that Officer Ross pulled him over without probable cause or with an

unlawful motive.  Therefore, Officer Ross is entitled to qualified immunity, and summary judgment in his favor on Senter's probable cause claim is warranted.

### 2.  **Excessive Force**

As a general matter, an officer violates the Fourth Amendment when he uses excessive force to effect the apprehension or detention of a free citizen.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  Excessive force is that which is "'excessive under objective standards of reasonableness.'"  Wilson v. City of Des Moines, 293 F.3d 447, 450 (8th Cir. 2002) (quoting Saucier, 533 U.S. at 201-02).  When evaluating an officer's use of force, the court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving –

about the amount of force that is necessary in a particular situation." Id. at 396-97; see also Nelson v. County of Wright, 162 F.3d 986, 990-91 (8th Cir. 1998).

It is well established that "no greater force should be used in making an arrest than was reasonable under the circumstances." Nelson, 162 F.3d at 990.   For example, striking a complacent suspect who is lying on the ground or slamming a handcuffed suspect into a wall would violate that suspect's Fourth Amendment rights. See, e.g., Champion v. Outlook Nashville, Inc., 380 F.3d 893, 903 (6th Cir. 2004) (pushing down hard on a suspect's back while suspect is lying face-down and is subdued or incapacitated constitutes excessive force); Young v. Prince George's County, Maryland, 355 F.3d 751, 757-58 (4th Cir. 2004) (reasonable jury could find throwing a cooperative, handcuffed suspect to the ground in response to a minor traffic violation is excessive); Lee v. Ferraro, 248 F.3d 1188, 1198 (11th Cir. 2002) (slamming suspect's head against car trunk after being placed in handcuffs is excessive).

In this case, the parties' accounts of what transpired during the arrest and transport to the RCLEC sharply conflict and, significantly, the parties dispute when Senter ceased resisting. Further, although defendants assert that Senter attempted to flee after having been sprayed with aerosol subject restraint, tased and struck by ASP batons, Senter insists that he was physically

incapable of running.   Similarly, although defendants assert that
Senter's head injuries at the RCLEC were a result of his lack of
cooperation, Senter claims that he was physically incapable of
continuing to resist.   Taking all the facts and inferences in a
light most favorable to Senter, the court finds that Senter has
alleged a violation of his Fourth Amendment right to be free from
excessive force.

As to the second inquiry of the qualified immunity analysis,
it is "clearly established" under the Fourth Amendment that an
individual has a "right to be free from excessive force in the
context of an arrest." Henderson v. Munn, 439 F.3d 497, 503 (8th
Cir. 2006).   The court further finds that issues of fact exist as
to whether a reasonable official would have understood the conduct
of Officers Ross, Conroy and Kough in arresting and transporting
Senter to violate Senter's Fourth Amendment rights.   Therefore,
defendants are not entitled to qualified immunity, and summary
judgment on Senter's excessive force claims is not warranted.

B.   **Municipal Liability**

Senter argues that defendant City of Saint Paul is vicariously
liable for the acts of defendants Ross, Kough, Conroy and Moriarty.
Municipalities are not vicariously liable under 42 U.S.C. § 1983
for an employee's unconstitutional acts.   Wedemeier v. City of
Ballwin, 931 F.2d 24, 26 (8th Cir. 1991) (citing Monell v. Dep't of
Soc. Servs., 436 U.S. 658, 691 (1978)).   Rather, municipal

liability exists only if a plaintiff can establish that either a municipal policy or custom is the moving force behind the constitutional violation. <u>Id.</u> Further, a plaintiff must establish that a municipal policy or custom is implemented to such a degree so as to amount to a "deliberate indifference" of constitutional rights. <u>Lund v. Hennepin County</u>, 427 F.3d 1123, 1125 (8th Cir. 2005) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-91 (1989)). A plaintiff must further establish an affirmative link between the policy and the particular constitutional violation alleged. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985).

In this case, Senter has not identified any express policy or custom of the City of Saint Paul that was the moving force behind any of the constitutional violations alleged. Therefore, Senter has not established a prima facie case of municipal liability under § 1983, and summary judgment in favor of the City of Saint Paul is warranted on all § 1983 claims.

**III. Remaining State Law Claims**

    **A. Assault and Battery**

"An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect." <u>Dahlin v. Fraser</u>, 288 N.W. 851, 852 (Minn. 1939). However, the threatened use of force by a peace officer to effect an arrest is lawful if the threatened force is reasonable. <u>Johnson v. Morris</u>, 453 N.W.2d 31, 41 (Minn. 1990) (citing Minn. Stat. § 609.06(1)(a)).

10

Therefore, to establish an assault claim against an officer effecting an arrest, a plaintiff must establish that the officer threatened to use unreasonable force - that is, more force than was necessary under the circumstances. <u>Johnson</u>, 453 N.W.2d at 41 (citing Minn. Stat. § 629.32). Battery is the "intentional, unpermitted offensive contact" with the person of another. <u>Paradise v. City of Minneapolis</u>, 297 N.W.2d 152, 155 (Minn. 1980). When a police officer makes an arrest, a battery claim is actionable only if the officer used "excessive force." <u>Johnson</u>, 453 N.W.2d at 40-41.

Officers Ross, Kough and Conroy move for summary judgment on plaintiff's assault and battery claims on the grounds of official immunity. "The doctrine of official immunity protects public officials from liability for discretionary actions taken in the course of their official duties." <u>Bailey v. City of St. Paul</u>, 678 N.W.2d 697, 700 (Minn. Ct. App. 2004) (citing <u>Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs</u>, 552 N.W.2d 711, 716 (Minn. 1996)). Such immunity exists "'to protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties.'" <u>Id.</u> (quoting <u>S.L.D. v. Kranz</u>, 498 N.W.2d 47, 50 (Minn. Ct. App. 1993)). Official immunity analysis proceeds in two steps. <u>Id.</u> at 701. First, a court asks whether the conduct challenged by the plaintiff

is discretionary or ministerial.  See id.  Second, if the conduct is discretionary, a court asks whether the officers' conduct was malicious or willful.  See id.

Discretionary acts are undertaken in the exercise of individual judgment and are generally protected.  Id.  Ministerial acts are acts undertaken pursuant to a specific duty arising from fixed and designated facts and are not protected.  Id.  "Generally, police officers are classified as discretionary officers entitled to [official] immunity."  Johnson, 453 N.W.2d at 42 (citing Elwood v. Rice County, 423 N.W.2d. 671, 678 (Minn. 1988)).  Here, the officers' conduct involved the exercise of individual judgment as to the amount of force necessary to properly subdue Senter. Therefore, the officers' actions were discretionary and are protected unless they were willful or malicious.

A public official commits willful or malicious conduct if he intentionally commits an act that he has reason to believe is prohibited.  Rico v. State, 472 N.W.2d 100, 106-07 (Minn. 1991). This inquiry "is usually a question of fact to be resolved by a jury."  Johnson, 453 N.W.2d at 42 (citing Elwood, 423 N.W.2d at 679.).  Once Senter resisted arrest, the officers clearly had leeway to use force to subdue him.  Senter, however, claims that viewing all inferences and evidence in his favor, the officers' conduct was willful or malicious.  Specifically, Senter claims that after he stopped resisting arrest the officers tased him multiple

12

times, repeatedly struck him in the legs and lower back with their
ASP batons and that one officer placed his foot on Senter's neck.
Moreover, Senter claims that upon arriving at the RCLEC the
officers slammed his head into the wall twice and left him
handcuffed in a holding room for five to eight hours before booking
him.  The court finds that these allegations create issues of fact
as to whether Officers Ross, Kough and Conroy had reason to believe
that their use of force was prohibited as unreasonable or excessive
and whether they intentionally used such force.  Accordingly,
defendants are not entitled to official immunity on plaintiff's
assault and battery claims, and summary judgment is not warranted
on those claims.  Further, defendant City of St. Paul is not
entitled to vicarious official immunity on plaintiff's assault and
battery claims.  See Dokman v. County of Hennepin, 637 N.W.2d 286,
297 (Minn. Ct. App. 2001) ("Vicarious official immunity protects a
governmental entity from liability based on the acts of an employee
who is entitled to official immunity.").

B.   Intentional Infliction of Emotional Distress

To maintain a claim for intentional infliction of emotional
distress, the claimant must establish that the conduct was "extreme
and outrageous, intentional or reckless, and that it caused severe
emotional distress."  Hubbard v. United Press Int'l, 330 N.W.2d
428, 438-39 (Minn. 1983).  The claimant must show that his or her
emotional distress rises to a level of which "no reasonable man

13

could be expected to endure." <u>Id.</u> at 436. Senter provides no evidence that he has incurred emotional distress that rises to the level necessary to support a claim for intentional infliction of emotional distress. Therefore, summary judgment is warranted on this claim.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendants Michael Conroy, Mark Ross, Ian Kough and the City of St. Paul's motion for summary judgment [Doc. No. 30] is granted in part and denied in part.

2.    Plaintiff's pro se motion for a jury trial [Doc. No. 40] is denied as moot.

Dated:  November 27, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court